SCANNED
FEB 0 7 2025
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-225(5) (NEB/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MUSTAFA JAMA,

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and defendant MUSTAFA JAMA (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 19 of the Indictment, which charges the defendant with money laundering, in violation of 18 U.S.C. § 1957. The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the Government agrees to move to dismiss the remaining counts of the Indictment against the defendant.

2. **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 19 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

At times between September 2020 and January 2022, the defendant worked for Brava Restaurant & Cafe LLC ("Brava Restaurant") and received compensation from Brava Restaurant. Brava Restaurant was located in a retail strip mall in Rochester, Minnesota. In approximately October 2020, Brava Restaurant enrolled as a distribution site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. Brava Restaurant fraudulently claimed reimbursement to the Federal Child Nutrition Program for food it supposedly provided to children.

Jama and his associates at Brava Restaurant coordinated their establishment of shell companies through which they received and disbursed Federal Child Nutrition Program funds to make expenditures that had nothing to do with feeding children. More specifically, on the exact same date—January 7, 2021—Salim Said, a co-owner of Safari Restaurant in Minneapolis, paid to register six different companies with the State of Minnesota for Jama and his Brava Restaurant associates. For the defendant, Salim Said paid to register a shell company named Nakumad LLC.

In 2021, Jama deposited into the Nakumad LLC bank account, which the defendant controlled with another conspirator, approximately $1,429,730 in fraud proceeds that were paid by Feeding Our Future to Brava Restaurant through the Federal Child Nutrition Program. The defendant should have known that the substantial amounts of money that he received into his account were criminally derived because Brava Restaurant was not actually providing enough food to justify such large deposits.

The defendant used some of those proceeds to contribute toward the purchase of a home located at 2687 Kantian Drive in Columbus, Ohio, as well toward the

2

purchase of Mediterranean coastal property in Alanya, Turkey. In addition, as alleged in Count 19 of the Indictment, on or about May 20, 2021, in the State and District of Minnesota and elsewhere, the defendant knowingly engaged in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957—namely, the deposit of check in the amount of $394,000 from a Nakumad LLC bank account controlled by the defendant to Titlesmart, Inc., for the purchase of a home located at 16764 Enchanted Court in Lakeville, Minnesota—such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343.

3.    **Waiver of Pretrial Motions.** The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.    **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be

3

protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.    **Statutory Penalties**. The defendant understands that Count 19 of the Indictment (money laundering, in violation of 18 U.S.C. § 1957) is a felony offense that carries the following statutory penalties:

    a.    a maximum of 10 years in prison;

    b.    a supervised release term of not more than 3 years;

    c.    a maximum fine of $250,000, or twice the amount of the criminally derived property , whichever is greatest;

    d.    restitution as agreed to by the parties in this agreement; and

e.    a mandatory special assessment of $100.

7.    **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

a.    Base Offense Level. The parties agree that the base offense level for money laundering is **22** because the amount laundered was more than $550,000 but not more than $1,500,000. U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(H).

b.    Specific Offense Characteristics. The parties agree that the offense level should be increased by **1** level because the defendant's charge of conviction is 18 U.S.C. § 1957. The parties agree that no other specific offense adjustments apply.

c.    Chapter 3 Adjustments. The parties agree that the defendant's offense level should be reduced **4** levels, pursuant to U.S.S.G. § 3B1.2(a), because he was a minimal participant in any criminal activity. The parties otherwise agree that, other than credit for acceptance of responsibility, no Chapter 3 adjustments apply.

d.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation

Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.   Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.   Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.   Guidelines Range. If the adjusted offense level is **14**, and the criminal history category is I, the Sentencing Guidelines range is **15 – 21** months of imprisonment.

h.   Fine Range. If the adjusted offense level is **14**, the Sentencing Guidelines fine range is **$7,500** to **$75,000**. U.S.S.G. § 5E1.2(c)(3).

8.   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination

6

regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10.    **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11.    **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is

7

convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12.    **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the offense regardless of whether the victim was named in the Indictment. The defendant agrees that he owes restitution in the amount of $1,429,730 jointly and severally with co-defendant Ayan Jama.

13.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

8

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a transaction or attempted transactions in violation of Title 18, United States Code, Sections 1956 and 1957 as charged in the Indictment, and any property traceable to such property, and pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the charges in the Indictment. The property subject to forfeiture includes, but is not limited to the following:

(1) the real property located at 2687 Kantian Drive, Columbus, Ohio;

(2) the real property located at 16764 Enchanted Court in Lakeville, Minnesota;

(3) $144,055.70 seized from Home Federal Savings Bank account x7469 held in the name of Nakumad LLC; and

(4) $95,444.82 seized from Home Federal Savings Bank account x93171 held in the name of Nakumad LLC.

The defendant agrees that this property is forfeitable because it constitutes or is derived from proceeds of the wire fraud scheme charged in the Indictment and was involved in the money laundering conspiracy charged in the Indictment, or is traceable to such property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge

(including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds.

The defendant admits that the real property located 16764 Enchanted Court in Lakeville, Minnesota is subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1) because it was involved in the violation of 18 U.S.C. § 1957 charged in Count 19 of the Indictment, or is traceable to property involved in that violation.

With respect to the real property located at 2687 Kantian Drive, Columbus, Ohio, the defendant agrees that he provided at least $168,000 of the funds used towards the purchase of this property, and that the funds he provided were proceeds traceable to the wire fraud conspiracy and were involved in or traceable to funds involved in the money laundering conspiracy charged in the Indictment. The defendant agrees that the equity in the property resulting from the $168,000 referenced above is subject to forfeiture. The defendant acknowledges that others may have an interest in this property which the government may assert is subject to forfeiture, and he waives his right to file a claim in any ancillary proceeding or civil judicial forfeiture action filed against the real property at 2687 Kantian Drive, Columbus, Ohio, as well as his right to receive notice of such other forfeiture actions against this property.

The defendant agrees that the forfeiture section of this plea agreement binds any entity he owns or controls, and he agrees to execute any further documents necessary to forfeit the property as set forth above, including any waiver of ownership or consent to administrative forfeiture form that may be required to complete the forfeiture of items 3 and 4 above.

15.     **Waivers of Appeal and Collateral Attack**. The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

17.    **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.  By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's

decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

LISA D. KIRKPATRICK
Acting United States Attorney

Date: _____2/6/2025_____

BY:    MATTHEW S. EBERT
JOSEPH H. THOMPSON
HARRY M. JACOBS
DANIEL W. BOBIER
Assistant United States Attorneys

Date: 2/6 2025

MUSTAFA JAMA
Defendant

Date: _____2/6/2025_____

JASON STECK
Counsel for Defendant

13