UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-225(6) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S POSITION** |
| v. | ) | **REGARDING SENTENCING** |
| | ) | |
| ZAMZAM JAMA, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy and Rebecca E. Kline, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 16 months in prison.

## THE OFFENSE CONDUCT

Defendant Zamzam Jama's younger siblings, Sharmake and Ayan Jama, owned and operated Brava Restaurant, located in a retail strip mall in Rochester, Minnesota. Jama worked at the restaurant from 2020 through 2022, and again in 2024.

In October 2020, Brava Restaurant enrolled as a distribution site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. Thereafter, and continuing until approximately December 2021, Brava Restaurant fraudulently claimed to be serving approximately 3,000 breakfasts and lunches to children, every day. Over that period, Brava Restaurant submitted fake meal counts

claiming to have served more than 1.7 million meals to children in Rochester. As a result of those fraudulent claims, Brava Restaurant was paid over $5.3 million in federal child nutrition program funds.

On January 7, 2021, Jama and her co-defendants each registered a shell company for the purpose of laundering Brava Restaurant's fraud proceeds. Jama's shell company was called African Heritage LLC. In 2021, Jama received approximately $491,245 in fraud proceeds from Brava Restaurant, which she deposited into her African Heritage LLC bank account. Jama contributed approximately $80,000 of that money toward the purchase of a home in Rosemount, Minnesota. She also used approximately $31,442 of the money to purchase a 2021 Toyota RAV 4.

On September 13, 2022, Jama was charged by indictment with one count of conspiracy to commit money laundering and two counts of money laundering. On February 5, 2025, Jama pled guilty to one count of money laundering.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561

2

F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A.    Sentencing Guidelines Range

The base offense level for money laundering is 8 pursuant to Guidelines § 2S1.1(a)(2). (PSR ¶ 77.) The base offense level is increased by 12 levels pursuant to Guidelines § 2B1.1(b)(2)(g) because the defendant is responsible for laundering more than $250,000 but less than $550,000. (PSR ¶ 77.) The offense level is increased by another 1 level pursuant to Guidelines § 2S1.1(b)(2)(A) because the defendant was convicted under 18 U.S.C. § 1957. (PSR ¶ 78.) As explained in its objections to the PSR, the government believes the defendant is entitled to the minimal participant role adjustment contemplated by the parties in the plea agreement, and that the offense level should be decrease by 4 levels pursuant to Guidelines § 3B.1.2(a), rather than the 2-level reduction called for in the PSR. (PSR ¶ 80.) The total adjusted offense level is decreased another 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. The defendant also is entitled to a 2-level reduction because she meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). (PSR ¶ 85.) The defendant falls into Criminal History Category I. (PSR ¶ 91.) With a total adjusted offense level of 12, and a Criminal History Category I, the defendant's advisory Guidelines range is 10 to 16 months in prison.

**B.      Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1.      Nature and Circumstances of the Offense**

Jama participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. She took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance her lifestyle, including purchasing a new home and car. She knew she was not entitled to the money and that it was obtained by lying to the government about the number of children her family allegedly served meals to at their Rochester restaurant. Simply put, she took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich herself.

**2.      History and Characteristics of the Defendant**

Jama was born in Somalia in 1974 but moved to Kenya in 1991 at the outbreak of civil war. Her father died that same year. She graduated high school and obtained an associate's degrees in child development. Jama immigrated to the United States with her mother and siblings in 1997. Before working for her family restaurant, Jama worked in the childcare field. She is married and has three children.

4

**3.     Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Jama's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Jama included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work. Would-be fraudsters must understand that there are serious consequences for their actions. Until the risks of stealing from the public fisc outweigh the potential reward, fraud in Minnesota will continue.

**4.     The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 72 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Jama, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 9 months. Considering the amount of

money Jama laundered is closer to the upper threshold of the § 2B1.1 loss table, a sentence above the average for her Judiciary Sentencing Information cohort is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 16 months in prison.

Respectfully Submitted,

Dated: March 11, 2026,

DANIEL N. ROSEN
United States Attorney

_/s/ Matthew C. Murphy_
BY:  MATTHEW C. MURPHY
REBECCA E. KLINE
Assistant U.S. Attorneys

6